UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALAN B. KALIN**, <br> Plaintiff, <br> v. <br> **SEMPER MIDAS FUND, LTD., ET AL.**, <br> Defendants. | Case No. 4:21-cv-01062-YGR <br><br> **ORDER GRANTING MOTIONS TO DISMISS** <br><br> Re: Dkt. Nos. 27, 47, 67 |

Before the Court are two motions filed by defendants, including motions to dismiss: (i) defendants David Bree, Gregory A. Parsons, Stephen C. Ellwood, Richard D. Parsons, Ronald S. Lauder, Gregory W. Ellis, Semper Capital Partners LLC, RDP I LLC, and RSL Capital LLC for lack of personal jurisdiction; and (ii) for failure to state a claim under California Corporation Code Sections 25401, 25501, and 25504. (Dkt. Nos. 27, 47.)

Having carefully reviewed the record, the pleadings, the papers submitted on each motion, the parties' oral argument at the hearing held on December 7, 2021, and for the reasons set forth more fully below, the Court **HEREBY ORDERS** as follows: (1) the motions to dismiss for lack of personal jurisdiction are **GRANTED WITH LEAVE TO AMEND**; and (2) the motions to dismiss for failure to state a claim are **GRANTED WITH LEAVE TO AMEND**.[1]

**I.   BACKGROUND**

The complaint alleges as follows:

On December 1, 2019, plaintiff Alan B. Kalin purchased securities from Semper Midas

---

[1] Plaintiff and defendant Bress' briefing tactics were improper. Both parties engaged in a wholesale incorporation by reference of the argument raised in the remaining defendants' motion to dismiss. Such a tactic provides a means of circumventing page limits on briefs as required by the Civil Local Rules and this Court's Standing Order. In opposition, plaintiff improperly imputed new arguments against the defendants other than Bress without seeking leave to file a surreply. Nonetheless, as explained below, the Court finds that plaintiff's novel argument does not change the result on the jurisdictional motions. Should the parties engage in the same briefing tactics again, the briefs will be stricken.

Fund, Ltd. (the "Fund") in the amount of $330,000. (Compl. ¶ 3.) In connection with the investment, plaintiff relied on an offering memorandum prepared by the Fund's investment advisor, Semper Capital Management, L.P. (*Id*.) Prior to making his investment, plaintiff was also provided with two "Fact Sheets" prepared by Semper Capital Management, L.P. (*Id*. ¶ 20.) As of June 2019, the leverage was 185% and as of September 2019 it was 200%. (*Id*.)

The Fund was established to invest primarily in mortgage-related instruments. (*Id*. ¶ 2.) Five months after his investment, plaintiff was informed by Semper Capital Management, L.P. that the Fund had experienced a loss of value "over 50%." (*Id*. ¶ 4.) Plaintiff was later informed that his investment lost 93% of its value. (*Id*.) In October 2020, plaintiff sold his securities back to the Fund for a loss of $307,323.44. (*Id*. ¶ 6.)

The Fund consisted primarily of mortgage-backed securities not guaranteed by a governmental agency. (*Id*. ¶ 9.) Plaintiff alleges that the Fund's leverage consisted entirely of 30-day repurchase agreements ("repo agreements"), which were loans secured by the Fund's assets. (*Id*. ¶¶ 9-10.) The principal use of repo agreements is the secured borrowing and lending of cash. (*Id*. ¶ 11.) Plaintiff alleges that the use of short-term repo agreements with 30-day terms to borrow heavily against long terms assets (mortgage-backed securities) exposed the Fund to significant, undisclosed risks. (*Id*. ¶¶ 14-15.)

There is no dispute that the following events occurred at the outbreak of the COVID-19 pandemic: In March 2020, there was a "sudden, although very brief and temporary, lack of liquidity in the market for mortgage-backed securities" that resulted in a large spread between the bid and asking prices for such securities. (*Id*. ¶ 18.) Essentially, demand for non-agency mortgage-backed securities dried up making it difficult or impossible to attribute a market price to the collateral. (*Id*.) In turn, the Fund assets plummeted, the Fund was unable to meet the repo agreements' margin calls, and assets were liquidated at abnormally low prices resulting in significant losses to the Fund. (*Id*. ¶¶ 15-18.)

Plaintiff now brings individual claims: (1) asserting violation of California Corporations Code sections 25401 and 25501 against the Fund for allegedly untrue and misleading statements made in connection with the sale of securities; (2) director liability under California Corporations

Code section 25504 against defendants Gregory A. Parsons and David Bree; and (3) control liability under California Corporation Code section 25504 against all named defendants except the Fund.[2]

## II. MOTIONS TO DISMISS FOR LACK OF JURISDICTION

Defendants David Bree, Gregory A. Parsons, Stephen C. Ellwood, Richard D. Parsons, Ronald S. Lauder, Gregory W. Ellis, Semper Capital Partners LLC, RDP I LLC, and RSL Capital LLC aver that they should be dismissed from these proceedings under Rule 12(b)(2) because this Court lacks personal jurisdiction over them. As explained below, the Court agrees and the motions are **GRANTED WITH LEAVE TO AMEND**. Jurisdiction over the Fund and Semper Capital Management, L.P. is not contested.

### A. LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 12(b)(2), a defendant may be dismissed if the court lacks personal jurisdiction over it. The party filing the complaint bears the burden to establish jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over parties, looking to the state's long arm statute regarding service of summons. *See* Fed. Rule Civ. Proc. 4(k)(1)(A) (service of process effective to establish personal jurisdiction over defendant subject to jurisdiction in the state court where the district is located); *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (same). California's long-arm statute, in turn, permits the exercise of personal jurisdiction to the full extent permitted by federal due process. *Daimler*, 571 U.S. at 126; *see also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017).

### B. ANALYSIS

Only specific jurisdiction is disputed; general jurisdiction does not exist. Specific jurisdiction "exists when a case arises out of or relates to the defendant's contacts with the forum." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quotations and citations omitted). "In

---

[2] The complaint alleges the business role of each defendant in this case. (Compl. ¶¶ 27-28, 30, 31, 32, 34-38.) The Court assumes the parties' familiarity with these allegations.

3

order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). As the Supreme Court explained, the inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant centers on the relationship among the defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id*. at 284. The plaintiff cannot be the only link between the defendant and the forum; rather, the defendant's conduct must form the necessary connection with the forum in order to establish jurisdiction. *Id*. at 285.

In the Ninth Circuit, three requirements must be met for a court to exercise specific jurisdiction over a nonresident defendant: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e*. it must be reasonable." *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006); *Schwarzenegger*, 374 F.3d at 802 (citation omitted).

Based on the foregoing test, the Court concludes that it lacks specific jurisdiction over defendants David Bree, Gregory A. Parsons, Stephen C. Ellwood, Richard D. Parsons, Ronald S. Lauder, Gregory W. Ellis, Semper Capital Partners LLC, RDP I LLC, and RSL Capital LLC. It is not disputed that these defendants do not reside in California. The complaint does not allege that any of the defendants directed any actions at or within California. Instead, it merely alleges in a conclusory fashion that the defendants had control over the Fund and Semper Capital Management, L.P. (Compl. ¶¶ 27-38.)

With respect to Semper Capital Partners LLC, RDP I LLC, and RSL Capital LLC,

4

ownership "is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza*, 793 F.3d at 1070; *see also Sher v. Johnson*, 911 F.2d 1357, 1366 (9th Cir. 1990) (stating that a "partner's actions may be imputed to the partnership . . . but ordinarily may not be imputed to the other partners"). Plaintiff has not offered any non-conclusory allegations to support a finding that Semper Capital Partners LLC, RDP I LLC, and RSL Capital LLC were directly involved in the dispute here.

As to the individual defendants, the control "liability is not to be conflated with amenability to suit in a particular forum." *AT&T v. Compagnie Bruxells Lambert*, 94 F.3d 586, 591 (9th Cir. 1996); *Sher*, 911 F.2d at 1365-66 ("Liability and jurisdiction are independent."); *see also Toyz, Inc. v. Wireless Toyz, Inc.*, No. C 09-05091 JF (HRL), 2010 WL 334475, at *8 (N.D. Cal. Jan. 25, 2010) (holding that the "blanket allegation that the Individual Defendants controlled the [corporate defendant] at 'various relevant times' does not establish purposeful direction by any specific Individual Defendant"). The threadbare and conclusory allegations of control do not tie the individual defendants to the forum, let alone the claims at issue, and plaintiff has failed to otherwise persuade. Plaintiff conceded the point during oral argument.

Rather, plaintiff invokes the Ninth Circuit's decision in *San Mateo County Transit District v. Dearman, Fitzgerald & Roberts, Inc.*, 979 F.2d 1356 (9th Cir. 1992), to suggest that there is nationwide personal jurisdiction based upon defendants' control. This reliance is misplaced. *San Mateo* involved the Securities Exchange Act, a *federal* law, which expressly authorizes nationwide service of process "if the plaintiff makes a non-frivolous allegation that the defendant controlled a person liable for the fraud." *Id*. at 1358 (analyzing 15 U.S.C. § 78aa). Setting aside that there was evidence of fraudulent conduct in *San Mateo*, which is not the case here, the district court must still apply "the law of the state in which the district court sits" where "there is no applicable federal statute governing personal jurisdiction . . . ." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014).[3]

---

[3] The text of Federal Rule of Civil Procedure 4(k) is instructive. Rule 4(k) creates a clear or plain distinction between federal and state laws with respect to personal jurisdiction: "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district

5

Plaintiff's argument is fundamentally a novel theory that is inconsistent with well-established due process requirements. The Court declines to adopt such an approach. "In this circuit, we employ the [] three-part test to analyze whether a party's 'minimum contacts' meet the Supreme Court's directive" that for "due process to be satisfied, a defendant, if not present in the forum, must have 'minimum contacts' with the forum state such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (citation omitted). California law is consistent. *See Taylor-Rush v. Multitech Corp.*, 265 Cal. Rptr. 672, 677-78 (1990) (applying the minimum contacts analysis to claims premised on Cal. Corp. Code §§ 25401, 25504, 25504.1).

In light of the foregoing analysis, the Court **GRANTS** the motions to dismiss for lack of personal jurisdiction **WITH LEAVE TO AMEND**.[4]

### III. MOTIONS FOR FAILURE TO STATE A CLAIM

#### A. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199 (9th Cir. 2003). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, (2007)). That requirement is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inferences that the defendant is liable

---

court is located . . . or (C) when authorized by a federal statute." Fed. R. Civ. Proc. 4(k)(1)(A)-(C). As defendants note, and plaintiff ignores, the authorization of nationwide service of process furthers congressional objectives. *See, e.g.*, *BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1556 (2017) ("Congress' typical mode of providing for the exercise of personal jurisdiction has been to authorize service of process."); *Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 948 (11th Cir. 1997) ("Where, as here, Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives.").

[4] At the hearing, the Court denied plaintiff's request for plaintiff to compel further jurisdictional discovery but asked for the written responses. Having reviewed the submissions, the request is still denied. Plaintiff has not persuaded that his requests are relevant to the jurisdictional inquiry and discovery into stress testing goes to the merits. *See Pebble Beach Co.*, 453 F.3d at 1160 ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery[.]").

for the misconduct alleged." *Id*. In evaluating a motion to dismiss under Rule 12(b)(6), the Court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff. *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). The Court will not assume facts not alleged, nor will it draw unwarranted inferences. *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").[5]

In securities cases, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).[6] If a court dismisses a complaint, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

### B. PLAINTIFF FAILED TO PLAUSIBLY ALLEGE CLAIMS AGAINST DEFENDANTS UNDER CALIFORNIA CORPORATIONS CODE §§ 25401 AND 25501

California Corporations Code section 25401 makes it "unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a

---

[5] Both parties agreed at the hearing to the application of Rule 8 as opposed to Rule 9.

[6] The parties do not dispute that the Court can consider three documents referenced in the complaint and presented in connection with the motions: (1) the Confidential Information Memorandum dated July 1, 2019 (Dkt. No. 29-1); (2) the June 2019 Fact Sheet (Dkt. No. 29-2); and (3) the September 2019 Fact Sheet (Dkt. No. 29-3). All page references to Docket Number 29-1 are to the page numbers supplied by defendants for consistency given that the document was not consecutively paginated.

material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading." Cal. Corp. Code § 25401. Section 25501 provides the civil enforcement mechanism.[7] The Court analyzes the underlying issues in turn.

### i. Whether Plaintiff Relies On Non-Actionable Puffery

Defendants assert that several statements are "mere puffery" that are not actionable misrepresentations of material fact.

The first issue concerns whether the term "rigorous" is nonactionable puffery. Plaintiff points to several statements in the offering memorandum concerning "rigorous analysis." For instance, the offering memorandum states that "the partnership seeks to uncover and extract value through rigorous fundamental analysis." (Compl. ¶ 22.) On its own, this is vague and not objectively verifiable. However, the same section further provides that "[t]he Investment Manager engages in rigorous qualitative and quantitative analysis, including, but not limited to: . . . rigorous cash flow modeling, scenario analysis and stress testing." (Compl. ¶ 23; Dkt. No. 29-1 at 41.) Whether this latter statement is actionable as a matter of law presents a closer question. The question here is whether the challenged statement makes a specific and measurable claim. The Court holds that it does. The statement arguably promises that the Fund subjected its products to some form of cash flow modeling, scenario analysis, and stress testing and is therefore a specific factual assertion which could be established or disproved. *Ahern v. Apple*, 411 F. Supp. 3d 541, 557 (N.D. Cal. 2019) (holding that "rigorous testing methods that simulated customers' experiences" promises some form of testing and was actionable); *Sanders v. RealReal, Inc.*, No. 1-cv-07737-EJD, 2021 WL 1222625, at *10 (N.D. Cal. Mar. 31, 2021) (acknowledging that the word "rigorous" cannot be read in isolation and holding that statement related to the "rigorous authentication process" was actionable).

The complaint alleges that the offering memorandum also assured the safety and security

---

[7] Cal. Corp. Code § 25501 provides: "Any person who violates Section 25401 shall be liable to the person who purchases a security from, or sells a security to, that person, who may sue either for rescission or for damages (if the plaintiff or the defendant, as the case may be, no longer owns the security), unless the defendant proves that the plaintiff knew the facts concerning the untruth or omission or that the defendant exercised reasonable care and did not know (or if the defendant had exercised reasonable care, would not have known) of the untruth or omission."

8

of the Fund's investment by highlighting statements such as "thoughtful qualitative analysis," "disciplined investment management," and "dynamic cross risk allocation." The Court finds that the qualifiers such as "thoughtful," "disciplined," and "dynamic" are "vague, generalized, and unspecifi[ed]" assertions that constitute mere puffery and in turn are not actionable. *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003); *IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 Fed. Appx. 850, 857 (11th Cir. 2016) (holding that descriptors such as "thoughtful," "effective," and "optimal" were nonactionable puffery); *In re Virtus Inv. Partners, Inc.*, 195 F. Supp. 3d 528, 538 (S.D.N.Y. 2016) (holding that statements defining a strategy as "dynamic," "analytic," "qualitative," or "proprietary" were puffery).

### ii. False And Misleading Statements Concerning Leverage

Plaintiff alleges that the Fund "downplayed the extent of leverage," and "mask[ed] the enormous risk to which [leverage and highly risky short term repo agreements] exposed the Fund." (Compl. ¶ 24.) Further, the complaint alleges, that "extreme leverage" was used and the Fund failed to disclose that the use of leverage "would expose it to catastrophic losses." (*Id*. ¶¶ 24, 25a.) The complaint concedes that the Fund indicated that it "may also utilize leverage" and that such use would involve "certain risks." (*Id.* ¶ 24.) It also concedes that the "use of leverage may increase the volatility of the Fund." (*Id*.)

There is no dispute here that the plaintiff knew how much leverage was used when he made his investment because the Fact Sheets that plaintiff relied upon expressly disclosed the amount. (*Id*. ¶ 20.) The offering memorandum also plainly provided that "[t]here is no limitation on the use of leverage by the Investment Manager. The use of leverage by the Partnership may increase the volatility of the Partnership." (Dkt. No. 29-1 at 70.) Plaintiff argues that the "extreme" use of leverage and "catastrophic" risk of loss should have been disclosed. "Whether or not a company used the adjective plaintiff chooses should not be the focus of the Court's Inquiry." *In re Seagate Tech. II Sec. Litig.*, No. C 88-20489, 1989 WL 222969, at 4 (N.D. Cal. May 3, 1989). Instead, focusing on the plain disclosures known to the plaintiff at the time of his investment, the Court holds that a reasonable investor could not have been misled. Furthermore, plaintiff fails to plead why the disclosures concerning leverage and risk were false or misleading at

9

the time that they were made. *See Yokell v. Draper*, No. 18-cv-02124, 2018 WL 3417514, at *8 (N.D. Cal. July 3, 2018) (dismissing Section 25401 claim where the plaintiff failed to plead how statements "were false or misleading at the time they were made").

Notably, plaintiff fails to seriously distinguish the risk disclosures emphasized by the defendant. Perhaps appreciating the limitations of his claim and pleading, plaintiff invokes *res ipsa loquitur* and asks: "'Is this 'negligence by hindsight? Perhaps it is, but it is perfectly logical and perfectly justified." (Dkt. No. 33 at 13.) This is not perfectly logical and perfectly justified where the pleading standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citation omitted).[8]

### iii. False And Misleading Statements Concerning Repurchase Agreements

Plaintiff alleges that the offering memorandum "nowhere disclosed its highly risky short-term repo agreements." He further alleges that repurchase agreements "presented 'a certain amount of collateral risk' but that by utilizing hedging strategies any decline in value would be 'substantially, if not fully, offset by the hedging vehicle.'" (Compl. ¶ 24.) In truth, plaintiff asserts that the "extreme leverage procured through very short-term repo agreements in which the collateral was marked to market every day and in which a margin call would have to be satisfied within by the close of business the following day or else see the collateral sold at fire sale prices" ultimately "exposed the fund to a high level of risk, contrary to assurances in the offering memorandum that the fund would maintain ample near-term liquidity and a constant focus on liquidity, risk management, and downside protection." (*Id*. ¶ 25a.)

The complaint concedes that repurchase agreements were contemplated in the establishment of the Fund. (*Id*. ¶ 2.) However, plaintiff suggests that the Fund needed to disclose that portfolio consisted entirely of 30-day repurchase agreements. This is not so. Plaintiff does

---

[8] The Court agrees that the plaintiff does not need to plead negligence, fraud, proof of reliance, or causation. *See Bowden v. Robinson*, 67 Cal. App. 3d 705, 715 (1977). However, Section 25401 is not a strict liability statute. *Id*. The text of the statute still requires a consideration of materiality "in light of the circumstances under which the statements were made."

1   not contest that the offering memorandum disclosed that the Fund "may use leverage, through the
2   use of secured financing such as reverse repo agreements" and that it "may engage in repurchase
3   agreements[.]"  (Dkt. No. 29-1 at 43.)  A reasonable investor could not have been misled given the
4   plain disclosure and the law does not require the defendant to disclose each and every type of
5   repurchase agreement.  *Ins. Underwriters Clearing House, Inc. v. Natomas Co.*, 228 Cal. Rptr.
6   449, 454 (1986) (affirming dismissal of Section 25401 where shareholder voting rights in
7   connection with mergers were plainly disclosed and holding that the prospectus did not need to
8   "enumerate[] every possible kind of merger or reorganization"); *see also Hunt. V. Alliance N. Am.*
9   *Gov't Income Tr., Inc*., 159 F.3d 723, 730-31 (2d Cir. 1998) (disclosure was broad enough to
10  encompass mortgage securities at issue and taken together in context would not mislead a
11  reasonable investor).  Again, plaintiff also fails to allege how the disclosures were plausibly false
12  or misleading at the time they were made.

### iv. False And Misleading Statements Concerning Diversification

Next, the complaint alleges that the offering memorandum touted that the Fund would uncover and extract value through "rigorous fundamental analysis, dynamic cross sector risk allocation and continuous technological development while creating a diversified portfolio maximizing risk and reward profiles with a constant focus on liquidity, risk management and downside protection." (Compl. ¶ 22.)  Plaintiff claims this was untrue because "[t]he portfolio was not 'diversified' but rather concentrated almost entirely in a single asset class, exposing the Fund to a high level of risk in the event that asset class were to experience a transient lack of liquidity." (*Id*. ¶ 25b.)

Plaintiff has failed to allege how the diversification of the portfolio was plausibly false or misleading when disclosed.  The weakness in the allegation is demonstrated by plaintiff's opposition that concedes "concentration was disclosed to some extent in the Fund Fact Sheets." (Dkt. No. 33 at 8.)  It is not disputed that the Fact Sheets provided to the plaintiff before his investment was made disclosed the concentration of the Fund.  Furthermore, defendants contend that it truthfully disclosed all material information about the diversification of the Fund.  To that effect, the offering memorandum states that the Fund "will pursue its objective by investing

11

primarily in non-Agency MBS and other mortgage derivative instruments." (Dkt. No. 29-1 at 41.) It also disclosed that while "the Partnership generally attempts to diversify capital among a number of investments, the Partnership may at times have a relatively large portion of its capital exposed to a particular investment or investment type, industry or market sector," and that "[t]he Partnership is not restricted on the amount of capital it can commit to any single investment or investment type, industry or sector." (Dkt. No. 29-1 at 69.)

Plaintiff seeks to circumvent the plain disclosures by suggesting that the Fund needed to disclose that the portfolio consisted entirely of 30-day repurchase agreements. However, as discussed in the context of repurchase agreements, such disclosure was not required. A reasonable investor could not have been misled given the plain disclosure and the law does not require the defendant to disclose each and every type of repurchase agreement.

### v. False And Misleading Statements Concerning Stress Testing

The complaint alleges that the Fund represented that it engaged in "structured stress-testing with thoughtful qualitative analysis" as well as "rigorous cash flow modeling, scenario analysis and stress testing." (Compl. ¶¶ 21, 23.) Plaintiff claims this was not true because "the touted 'stress-testing' was either non-existent or utterly failed to consider readily foreseeable events such as a temporary lack of liquidity in the market for the collateralized securities." (*Id.* ¶ 25b.) This conclusory pleading fails the lenient standard of Rule 8 because it is based on nothing more than speculation. Furthermore, plaintiff does not plead how the statement was false or misleading at the time it was made. As discussed above, the statement "thoughtful qualitative analysis" is nonactionable puffery.

### vi. False And Misleading Statements Concerning Hedging Strategies

The complaint alleges that the offering memorandum assured the use of "Dynamic Hedging and Risk Management: continuous monitoring of hedging strategies for each sector and overall portfolio." (Compl. ¶ 23.) Plaintiff asserts that in truth, the "promised 'hedging strategies' and 'hedging vehicle' that would 'substantially, if not fully offset' a decline in value of the collateral was a fiction." (*Id.* ¶ 25d.) A plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

12

*Iqbal*, 556 U.S. at 678. Calling the hedging strategies, a "fiction," without more, does not satisfy the plausibility standard. Moreover, plaintiff fails to allege how the hedging strategies were false or misleading at the time they were disclosed. As discussed above, plaintiff's invocation of negligence by hindsight is inconsistent with his pleading obligations.

\*\*\*

Since plaintiff has failed to plausibly allege that a materially false or misleading statement was made at the time of disclosure, his claims based on section 25401 and 25501 fail. Defendants' motion to dismiss is **GRANTED**. Plaintiff's counsel indicated at the hearing that additional facts can be alleged to support plaintiff's claim, including facts connected to failed stress testing. Given the liberal policy favoring amendment, defendant's motion is **GRANTED WITH LEAVE TO AMEND**.

### C. PLAINTIFF FAILS TO PLEAD DIRECTOR AND CONTROL PERSON LIABILITY UNDER CAL. CORP. CODE § 25504

Plaintiff alleges that defendants Gregory A. Parsons and David Bree are liable as directors of the Fund under California Corporation Code section 25504.[9] Plaintiff further alleges that the control defendants are liable under the same statute. These claims fail because plaintiff has not stated a primary claim under section 25401. *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1064 (N.D. Cal. 2013) ("[I]n the absence of a viable claim of primary liability, plaintiff cannot state a claim against the D&O defendants for control person liability under § 25504[.]"). Defendants' motions to dismiss are **GRANTED WITH LEAVE TO AMEND**.

### IV. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss for lack of personal jurisdiction

---

[9] California Corporations Code § 25504 provides that: "Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker–dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."

13

are **GRANTED WITH LEAVE TO AMEND**. Defendants' motions to dismiss all three of plaintiff's claims for failure to state a claim are **GRANTED WITH LEAVE TO AMEND**. Plaintiff must file an amended complaint within ninety (90) days of this Order and email a redline to the Court. Defendants' must file a response within twenty (20) days after plaintiff has filed his amended complaint.

This Order terminates Docket Numbers 27, 47, and 67.

**IT IS SO ORDERED.**

Dated: December 14, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**