UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALAN B. KALIN**,<br>Plaintiff,<br>v.<br>**SEMPER MIDAS FUND, LTD., ET AL.**,<br>Defendants. | Case No. 4:21-cv-01062-YGR<br>**ORDER GRANTING MOTION TO DISMISS; TERMINATING CASE**<br>Re: Dkt. No. 76 |

Plaintiff Alan B. Kalin commenced this removed action in state court alleging various violations of California Corporation Code sections 25401, 25501, and 25504. (*See* Dkt. No. 1.) On December 14, 2021, the Court granted two motions to dismiss with leave to amend, finding that: (1) personal jurisdiction was lacking as to defendants David Bree, Gregory A. Parsons, Stephen C. Ellwood, Richard D. Parsons, Ronald S. Lauder, Gregory W. Ellis, Semper Capital Partners LLC, RDP I LLC, and RSL Capital LLC; and (2) plaintiff failed to state a claim. (Dkt. No. 70.) Plaintiff timely filed an amended complaint. (Dkt. No. 71, Am. Compl.)

Now, the defendants have jointly filed a second motion to dismiss asserting that plaintiff has failed to cure the deficiencies previously addressed by the Court. (Dkt. No. 76.) Having carefully reviewed the record, the pleadings, the papers submitted in connection with the motion,[1] and for the reasons set forth more fully below, the Court **HEREBY ORDERS** as follows: (1) the motion to dismiss for lack of personal jurisdiction is **GRANTED WITHOUT LEAVE TO AMEND**; and (2) the motion to dismiss for failure to state a claim is **GRANTED WITHOUT LEAVE TO AMEND**.[2]

[1] Consistent with the prior order, the Court also considers: (1) Semper Midas Fund Ltd.'s Confidential Information Memorandum dated July 1, 2019 (Dkt. No. 29-1) (the "offering memorandum"); (2) Semper Midas Fund's June 2019 Fact Sheet (Dkt. No. 29-2); and (3) Semper Midas Fund's September 2019 Fact Sheet (Dkt. No. 29-3). All page references to the offering memorandum at Docket Number 29-1 are to the page numbers supplied by defendants for consistency given that the document was not consecutively paginated.

[2] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court

United States District Court
Northern District of California

United States District Court
Northern District of California

## I. BACKGROUND

In order to expedite the issuance of this order, the Court assumes the parties' familiarity with the allegations of the amended complaint and the Court's prior order, including the relevant standards set forth therein. Material differences will be addressed in the relevant portions of the analysis.

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendants David Bree, Gregory A. Parsons, Stephen C. Ellwood, Richard D. Parsons, Ronald S. Lauder, Gregory W. Ellis, Semper Capital Partners LLC, RDP I LLC, and RSL Capital LLC renew their argument that they should be dismissed under Rule 12(b)(2) because personal jurisdiction is lacking. As explained below, the Court agrees and the motions are **GRANTED WITHOUT LEAVE TO AMEND**. Jurisdiction over the Semper Midas Fund, Ltd. (the "Fund") and Semper Capital Management, L.P. is not contested.[3]

As the Court previously explained, plaintiff as the party filing the amended complaint bears the burden to establish personal jurisdiction. Again, only specific jurisdiction is at issue since general jurisdiction does not exist. Specific jurisdiction "exists when a case arises out of or relates to the defendant's contacts with the forum." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (cleaned up). "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). This inquiry focuses on the relationship among the defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). That is, plaintiff's presence in California is not outcome determinative since it is the defendant's

---

finds that the pending motion is appropriate for decision without oral argument. The hearing in this matter was previously vacated.

[3] The amended complaint and opposition to the motion to dismiss erroneously assert that Semper Capital Partners LLC does not dispute that it is subject to personal jurisdiction. This ignores the Court's prior order finding that personal jurisdiction was lacking after Semper Capital Partners LLC moved to dismiss for lack of personal jurisdiction. Despite plaintiff's unexplained mischaracterization, Semper Capital Partners LLC renewed its motion to dismiss.

contacts with the forum that are relevant.

Consistent with the Court's prior order, director and control liability is not to be conflated with jurisdiction. Defendants still must have sufficient contacts with the forum in order for personal jurisdiction to exist. In an effort to tie the various defendants to the forum, plaintiff's amended complaint alleges that based upon their roles and positions, the defendants "would necessarily have been aware of the false misleading statement in the offering memorandum and of the fact that the offering memorandum was being used to induce purchases by persons in California." (Am. Compl. ¶¶ 42-43, 45-46, & 50.) However, this conclusory allegation does not plausibly demonstrate any direct or indirect involvement in the creation or dissemination of the offering memorandum. Plaintiff provides no authority that general awareness, without more, is sufficient to support the exercise of personal jurisdiction. In essence, the amended complaint fails to sufficiently allege any affiliation with the forum apart from plaintiff's own transaction in the forum. Personal jurisdiction is still lacking.

Finally in order to preserve issues for appeal, plaintiff asserts that the defendants are subject to personal jurisdiction under *San Mateo County Transit District v. Dearman, Fitzgerald & Roberts, Inc.*, 979 F.2d 1356 (9th Cir. 1992). The Court already rejected this argument and there is no basis to reach a different result now. (Dkt. No. 70 at 5-6.) Additionally, plaintiff asserts in a footnote that the Court denied plaintiff's request to conduct discovery on personal jurisdiction matters. (Dkt. No. 77 at 9 n.2.) This is an overstatement without context. The parties had cooperated to conduct limited jurisdictional discovery on their own volition. The Court denied very limited inquiries into information that was not relevant to the jurisdictional analysis and that bore on the underlying merits. (Dkt. No. 70 at 6 n.4.) No additional requests were raised with the Court even though plaintiff was initially given ninety days to amend.

Since plaintiff has been afforded an opportunity to amend and has failed to cure the jurisdictional issues despite limited discovery, the Court finds that further amendment would be futile. Defendants David Bree, Gregory A. Parsons, Stephen C. Ellwood, Richard D. Parsons, Ronald S. Lauder, Gregory W. Ellis, Semper Capital Partners LLC, RDP I LLC, and RSL Capital LLC are dismissed **WITHOUT LEAVE TO AMEND**.

## III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Both remaining defendants, the Fund and Semper Capital Management, L.P., renew their motion to dismiss for failure to state claim under Rule 12(b)(6). Plaintiff's first claim for relief is for alleged violation of sections 25401 and 25501 of the California Corporations Code. The second and third claims for relief for director and control defendant liability are premised upon section 25504 of the California Corporations Code.

### A. First Claim for Relief: California Corporations Code §§ 25401 and 25501

As set forth in the Court's first dismissal order, section 25401 of the California Corporations Code makes it "unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, *in the light of the circumstances under which the statements were made*, not misleading." Cal. Corp. Code § 25401 (emphasis supplied).[4] No party disputes that plaintiff's amended complaint, and in turn the pending motion to dismiss, focus on three statements that are allegedly false and misleading:

- ***First***, plaintiff asserts that the offering memorandum at issue "represented that the Fund engaged in 'rigorous cash flow modeling, scenario analysis and stress testing," which "implied that [the Fund] conformed to generally accepted standards, which as [set forth in the amended complaint], require stress testing using extreme but plausible scenarios." (Am. Compl. ¶ 38.)

---

[4] Section 25501 of the California Corporations Code is the civil enforcement mechanisms. While the claim is premised upon California law, the parties do not dispute that it is appropriate to consider federal securities law. Indeed, most of the authority invoked by both parties applies federal securities law.

Plaintiff disputes the defendants' characterization of this case as a securities fraud action as being inaccurate. However, section 25401 claims have been characterized as "securities fraud" in California. *In re Mazur*, 81 Cal. App. 5th 203, 206 (2022). Even though claims sounding in fraud trigger Rule 9, the parties agreed that Rule 8 applies to their dispute. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (outlining scope of Rule 9); *Avakian v. Wells Fargo Bank, N.A.*, 827 F. App'x 765, 766 (9th Cir. 2020) (applying Rule 9 to negligent misrepresentation). Accordingly, the Court focuses on the plausibility of the allegations under Rule 8 as opposed to the heightened standards under Rule 9. For the reasons set forth in this order, plaintiff fails to state a claim under the less stringent requirements.

United States District Court
Northern District of California

- ***Second***, the amended complaint alleges that that the offering memorandum also falsely "represented that the Fund maintained a 'constant focus on liquidity, risk management and downside protection," and when "[r]ead in connection with the representations regarding rigorous scenario analysis and stress testing, this again implied that the Fund had established a contingency funding plan sufficient to meet the demands that the stress test calculated would be needed in the extreme but plausible scenario, which in fact it did not do[.]" (*Id.* ¶ 39.) Further undermining the truth of the constant focus, plaintiff alleges that liquidity and risk management were never discussed at the Fund's board meetings. (*Id.*)
- ***Third***, plaintiff alleges that the offering memorandum represented that repo agreements "presented a certain amount of collateral risk" but asserted "that by utilizing hedging strategies any decline in value would be 'substantially, if not fully, offset by the hedging vehicle.'" (*Id.* ¶ 40.)

Each of these three statements will be analyzed in the context of plaintiff's claim.

**1. Disclosures Concerning Stress Testing**

A substantial part of the motion to dismiss turns on whether the statement that the Fund engaged in "rigorous cash flow modeling, scenario analysis and stress testing," is non-actionable puffery. As the Court previously held, the inquiry into whether a statement is non-actionable puffery turns on whether the challenged statement makes a specific and measurable objective claim. (Dkt. No. 70 at 8.) The term rigorous is a "subjective term[] that [is] typical of puffery." *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 557 (N.D. Cal. 2019) (citation omitted). However, while the term rigorous is typical puffery, the Court previously held that the statement in its context arguably promises that the Fund subjected itself to *some form* of cash flow modeling, scenario analysis, and stress testing and is therefore a specific factual assertion which could be established or disproved. (*See* Dkt. No. 70 at 8.) Thus, plaintiff would be able to state a claim to the extent the Fund *did not* subject itself to cash flow modeling, scenario analysis, and stress testing. Leave to amend was initially granted on this basis.

Notably, plaintiff's amended complaint acknowledges that the Fund did engage in stress testing. (Am. Compl. ¶¶ 34-35.) Thus, plaintiff's own allegations confirm that the representation

was neither false nor misleading at the time it was made. On this basis, plaintiff has failed to state a claim. Instead, plaintiff attempts to transform the statement at issue into an assurance that the Fund promised to conform to accepted industry standards for stress testing. The Court cannot make that illogical inference.

Plaintiff's theory improperly assumes that "rigorous" can be interpreted to imply that defendants adhered to particular industry standards. However, as set forth above, the term rigorous is typical puffery. Thus, on its own, it is too "vague, generalized, and unspecifi[ed]" of an assertion to be an actionable and objective statement. *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003). Indeed, plaintiff's suggestion that rigorous means "extremely thorough, exhaustive, or accurate" and is synonymous with "meticulous, conscientious, diligent, careful, painstaking, demanding, and exacting" further highlights how vague, generic, and sprawling the term is on its own. (Dkt. No. 77 at 3.) None of these meanings remotely suggest that rigorous is concretely understood to be an industry standard, let alone one that is generally accepted. Furthermore, while plaintiff goes to great lengths to showcase "generally accepted standards for stress testing" (Am. Compl. ¶ 24), the opposition effectively concedes that "[t]he point of these examples is not to prove that there is a single such method[.]" (Dkt. No. 77 at 3.) Simply put, plaintiff has not plausibly alleged the existence of a uniform or industry standard of stress testing, nor can plaintiff point to any specific representation in the offering memorandum that the Fund would employ any particular method or technique of stress testing, and that it failed to do so in accordance with the representation.

Accordingly, plaintiff has failed to plausibly allege how any statement concerning stress testing was false or misleading at the time it was made to support a claim under section 25401 of the California Corporations Code.

**2. Disclosures Concerning Constant Focus**

Again, plaintiff alleges that the Fund's representation that it maintained a "constant focus on liquidity, risk management and downside protection," is false and when "[r]ead in connection with the representations regarding rigorous scenario analysis and stress testing, this again implied that the Fund had established a contingency funding plan sufficient to meet the demands that the

United States District Court
Northern District of California

stress test calculated would be needed in the extreme but plausible scenario, which in fact it did not do[.]" (Am. Compl. ¶ 39.) This argument is derivative in part on the plaintiff's erroneous belief that rigorous stress testing implied that the Fund would adhere to an industry standard, whatever that standard may be. The Court has already rejected that interpretation of that statement.

Plaintiff's reliance on this statement to support a claim fails on the ground that it is based on non-actionable puffery. The term "constant" is another "vague, generalized, and unspecifi[ed]" assertion that is not capable of objective verification. *See Glen Holly Entm't, Inc.*, 343 F.3d at 1015. As the defendants note, and plaintiff fails to seriously contest, courts have found generalized statements about risk management to be non-actionable as a matter of law. *See, e.g.*, *Veal v. LendingClub Corp*., No. 18-cv-2599-BLF, 2020 WL 3128909, at *12 (N.D. Cal. June 12, 2020) (dismissing claim premised on statement regarding the defendant's "relentless focus on compliance, security and risk management" as non-actionable puffery); *Emerson v. Mut. Fund Series Trust*, 393 F. Supp. 3d 220, 250 (S.D.N.Y. 2019) (dismissing claim based on primary representation that the defendant "places a strong focus on risk management that is intend[ed] to provide consistency of returns and to mitigate the extent of losses" on the grounds that it was puffery that provided no guarantees); *see also ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 205-06 (2d Cir. 2009) (holding that statements concerning a bank's "highly disciplined . . . risk management process" and "contin[uous] . . . focus on financial discipline" were non-actionable puffery upon which a reasonable investor could not be misled).[5]

Here, plaintiff does not identify a single specific factual representation that is not puffery, let alone a representation about a specific or particular contingency funding plan that was guaranteed, to support a claim. His new allegation that the board minutes show that liquidity and risk management were never discussed at board meetings does not lead to the plausible inference

[5] Plaintiff cites to several cases were specific, concrete, and particularized statements were made about risk. That is far from the case here and is belied by the plain disclosures identified below.

that leverage and risk management were *never* discussed. Indeed, the sole case invoked by the plaintiff to support the actionability of this statement on the Fund's constant focus undermines his claim under the circumstances alleged here. In *Casella v. Webb*, 883 F.2d 805, 807 (9th Cir. 1989), the defendant represented that the investment at issue "was a secure investment, a sure thing." Taken in its context, the statement in *Casella* made specific representations about the profitability and benefits of the investment. *Id*. at 807. The statement that the Fund maintains a "constant focus on liquidity, risk management and downside protection" makes no specific assurances about the liquidity, risk management, and downside protection itself.

**3. Disclosures Concerning Leverage, Hedging, Risk, and Loss**

While plaintiff concedes that the offering memorandum disclosed that repo agreements "presented a certain amount of collateral risk," he alleges that the Fund represented "that by utilizing hedging strategies any decline in value would be 'substantially, if not fully, offset by the hedging vehicle.'" (Am. Compl. ¶ 40.) In part, plaintiff's theory is that the Fund failed to disclose the extreme risks associated with the repo agreements and the terms of those agreements. The Court already addressed this issue. (Dkt. No. 70 at 9-11.) "Whether or not a company used the adjective plaintiff chooses should not be the focus of the Court's Inquiry." *In re Seagate Tech. II Sec. Litig*., No. C 88-20489, 1989 WL 222969, at *4 (N.D. Cal. May 3, 1989). Moreover, as the Court already held, the law does not require the defendant to disclose each and every type of repo agreement where it was plainly disclosed that repo agreements would be used. *Ins. Underwriters Clearing House, Inc. v. Natomas Co*., 228 Cal. Rptr. 449, 454 (1986) (affirming dismissal of section 25401 claim where shareholder voting rights in connection with mergers were plainly disclosed and holding that the prospectus did not need to "enumerate[] every possible kind of merger or reorganization"); *see also Hunt. V. Alliance N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 730-31 (2d Cir. 1998) (disclosure was broad enough to encompass mortgage securities at issue and taken together in context would not mislead a reasonable investor). To the extent that plaintiff suggests that the total mix of circumstances reveals a misrepresentation as to the repo agreements, leverage, risk, and hedging at issue, a close review of the allegations in the amended complaint and the offering memorandum shows that plaintiff knew of the risks associated with his

United States District Court
Northern District of California

investment and continued to proceed.

It is not disputed that the offering memorandum states that the Fund "will pursue its objective by investing primarily in non-Agency MBS and other mortgage derivative instruments." (Dkt. No. 29-1 at 41.) There is also no dispute that plaintiff knew how much leverage was used when he made his investment because the fact sheets that plaintiff relied upon expressly disclosed the amount. (Am. Compl. ¶ 18.) The offering memorandum also disclosed that while "the Partnership generally attempts to diversify capital among a number of investments, the Partnership may at times have a relatively large portion of its capital exposed to a particular investment or investment type, industry or market sector," and that "[t]he Partnership is not restricted on the amount of capital it can commit to any single investment or investment type, industry or sector." (Dkt. No. 29-1 at 69.)

Indeed, with respect to non-Agency MBS at issue, the offering memorandum disclosed that "[t]he secondary market . . . lacks liquidity" and that the Fund "may be unable to sell or otherwise dispose of a non-Agency MBS at times when it wishes to do so, even after a related hedging arrangement has terminated or expired." (*Id.* at 69.) Notably, "[s]ufficiently large and sudden movements in interest rates could result in substantial losses, possibly the loss of Limited Partner's entire investment," including "activities affected by general economic and market conditions," which plausibly includes events such as the COVID-19 pandemic impacting interest rates. (*Id.* at 68.) Moreover, the offering memorandum unequivocally provided that "prospective investors should consider that mortgage-backed securities . . . represent a specialized field of investment . . . and should carefully study the mortgage-backed securities and mortgage related derivates markets and satisfy themselves that they are conversant with the substantial risks involved in investing[.]" (*Id.* at 64.) Despite plaintiff's suggestion that the offering memorandum represented that the Fund's hedging would fully, if not substantially offset the losses, the offering memorandum also disclosed that "hedging positions are not designed to generate profits that in every situation will fully offset the losses on the Partnerships positions that would occur from changes in interest rates and certain credit exposure[.]" (*Id.* at 68.)

As the Court previously explained, the pleading standard "asks for more than a sheer

possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted). Focusing on the plain disclosures known to the plaintiff at the time of his investment, the Court holds that a reasonable investor could not have been misled about the nature of the investment, the leverage, the hedging, or any risk management.[6] Furthermore, focusing on 20/20 hindsight after his investment went wrong, plaintiff fails to plausibly plead why any disclosure was false or misleading at the time that it was made. *See Yokell v. Draper*, No. 18-cv-02124, 2018 WL 3417514, at *8 (N.D. Cal. July 3, 2018) (dismissing section 25401 claim where the plaintiff failed to plead how statements "were false or misleading at the time they were made").

***

Since plaintiff has failed to plausibly allege that a materially false or misleading statement was made at the time of disclosure, his claims based on sections 25401 and 25501 of the California Corporations Code fail. Defendants' motion to dismiss is **GRANTED**. Because plaintiff has already been granted leave to amend and has failed to cure the deficiencies, especially given the disclosures at issue, the Court finds that amendment would be futile. Accordingly, the motion is **GRANTED WITHOUT LEAVE TO AMEND**.

### B. SECOND AND THIRD CLAIMS: DIRECTOR AND CONTROL LIABILITY

Assuming for purposes of argument that personal jurisdiction existed over all defendants, plaintiff's second and third claims under California Corporations Code section 25504 fail because plaintiff has not stated a primary claim under section 25401. *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1064 (N.D. Cal. 2013) ("[I]n the absence of a viable claim of primary liability, plaintiff cannot state a claim against the D&O defendants for control person liability under § 25504[.]"). In light of the dismissal without leave to amend of the primary violation, amendment would be futile

[6] Curiously, with respect to the risks of the investment, plaintiff alleges that "[n]one of this was unforeseeable," especially given the extensive risk management history that plaintiff chronicles dating back to 1998. (Am. Compl. ¶¶ 17, 19-37.) When combined with the explicit disclosures referenced, this undermines the plausibility of his claim and further belies the unwarranted inferences he asks the Court to make.

United States District Court
Northern District of California

as to the second and third claims. Therefore, the motion is also **GRANTED WITHOUT LEAVE TO AMEND**.

## IV. CONCLUSION

For the foregoing reasons, the pending motion is **GRANTED WITHOUT LEAVE TO AMEND** as to all claims and defendants. The Clerk is **DIRECTED** to close the case.

This Order terminates Docket Number 76.

**IT IS SO ORDERED.**

Dated: October 12, 2022

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE